UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | No. 3:09-00245 |
| ) | CHIEF JUDGE CAMPBELL |
| BOBBY EUGENE TAYLOR ) | |

UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS

The United States of America, by and through Brooklyn Sawyers, Assistant United States Attorney for the Middle District of Tennessee, hereby responds to defendant's Motion to Suppress and Memorandum in Support of Motion to Suppress (hereinafter collectively, "Motion to Suppress") filed November 25, 2009.  D.E.19: Motion to Suppress; D.E. 20: Memorandum in Support of Motion to Suppress.  For the reasons set forth below, the defendant's Motion to Suppress should be denied.

FACTS

The Cora Howe Apartments ("apartment complex") are located at 1921 Greenwood Avenue in Nashville, Tennessee, and law enforcement considers it a high crime area.  The exterior of the apartment complex is well-lit with street lights throughout the parking lot and flood lights at the corners of buildings.  The apartment complex prohibits trespassing and provides notification to the public with a sign that reads, "No Trespassing, No Soliciting. Violators will be Prosecuted."  Management received multiple complaints from residents about individuals selling drugs out of cars in the apartment complex parking lot, and the manager personally observed what she believed to be drug dealing in vehicles. The manager contacted

1

Metro Nashville Police Department ("MNPD") to report those complaints.

On September 14, 2009, at approximately 10:00 p.m., MNPD Officers Shane Fairbanks and James King were conducting routine patrol, in an unmarked vehicle, at the apartment complex. The officers were patrolling that apartment complex in response to the aforementioned complaints that people were selling drugs out of their cars in the apartment complex parking lot.

Upon arriving at the apartment complex, the officers observed a white Oldsmobile Cutlass Ciera backed into a parking space beside a dumpster, with its engine and headlights turned off. The officers observed, from their vehicle, a male in the passenger seat of the parked vehicle, but were unable to determine if anyone was in the driver's seat. Officer Fairbank's attention was drawn to the parked vehicle because of the nature of the prior complaint that individuals were selling drugs out of vehicles. Officers also found it peculiar that the occupant or occupants of the vehicle were just sitting in a parked vehicle, rather than in the process of getting in or out of the vehicle. Also, from experience, Officer Fairbanks had found that behavior indicative of drug activity and had made drug related arrests in similar circumstances.

After making these observations, the officers decided to make contact with the vehicle's occupants to see if they were willing to talk to the officers. The officers stopped their vehicle prior to reaching the parked vehicle's location, and did not hinder the driver's ability to drive away. Officer Fairbanks approached the vehicle from the front and made contact with the vehicle occupant on the driver's side, while Officer King made contact with the passenger, who was later identified as Timothy Pillow.[1] Officer Fairbanks recognized the individual in the vehicle's

---

[1] The defendant refers to the passenger as "Tommy Pillow." D.E. 20, at 1. However, the officers' reports reflect the passenger's name was Timothy Christopher Pillow.

2

driver's seat as Bobby Taylor, the instant defendant, as someone who the officers had previously arrested following a car chase, where the defendant tossed a stolen firearm and marijuana out of his vehicle.  Officer Fairbanks also recalled that during that prior car chase, the defendant was attempting to drive to his residence, on Meridian Street in Nashville, which caused Officer Fairbanks to question whether the defendant was trespassing or lawfully on the apartment complex premises.

Upon making contact with the defendant, Officer Fairbanks asked him whether he had any drugs or guns in his possession. The defendant responded "no" to both questions.  In turn, Officer Fairbanks asked the defendant to step out of the vehicle and for permission to search his person.  The defendant gave the officer consent, got out of the vehicle, went to the rear of the vehicle and placed both of his hands on the trunk.  Officer Fairbanks placed the defendant's hands behind the defendant's back for the officer's safety during the search, but did not handcuff him.  Officer Fairbanks proceeded to search the defendant's person and immediately felt what the officer believed to be a barrel in the waistband of the defendant's shorts, which prompted the officer to lift the defendant's T-shirt. Officer Fairbanks saw the handle of a Glock pistol sticking out of the defendant's waistband, and subsequently handcuffed the defendant.  Officer Fairbanks retrieved the firearm, a loaded Glock, model 17, 9mm caliber pistol, and cleared it.

A further search of the defendant's person revealed a baggie containing 12.2 grams[2] of marijuana and four yellow Xanax pills, $590 in United States currency, and two cellular telephones.  At that point, Officer King called for back-up from two additional officers. Further,

---

[2] Defendant refers to the quantity of marijuana recovered from the defendant as "0.2 grams of marijuana." D.E. 20, at 1.  However, the officer's report reflects that 12.2 grams of marijuana was recovered.

3

it was determined that the defendant had at least one prior felony conviction. Once in custody, without questioning, the defendant volunteered to Officer King that he carries a gun because he was previously shot 11 times. During that process, the defendant was provided with his *Miranda* warnings.

Once the defendant and the passenger were secured, Officer Fairbanks searched the vehicle. The officers recovered a number of personal items that belonged to the defendant including a gambling ticket with the defendant's initials on it and various articles of men's clothing. Also, the officers recovered additional contraband located in the vehicle's trunk, including a black digital scale, approximately 100 plastic bags, some of which had the corner torn off, and some loose marijuana. Further, the defendant's sister and mother arrived at the scene. His sister stated that the defendant lives out of his car and his mother identified the instant vehicle as belonging to the defendant.

## **ARGUMENT**

The defendant has asked this Court to suppress the firearm that was recovered from him during the September 14, 2009, encounter between the defendant and law enforcement. D.E. 20, at 1. The defendant alleges that Officers Fairbanks and King violated his Fourth Amendment Constitutional rights. *Id*. at 4. Defendant's position is grounded in the factual sequence set forth in his Motion to Suppress–specifically, his contention that officers seized him without reasonable suspicion or probable cause and then found the firearm described in the indictment. *Id*. at 2.

As set forth above, the government contends, and Officers Fairbanks and King will testify, that they stopped their vehicle short of the defendant's vehicle and therefore did not block him from exiting and that they made consensual contact with the defendant and obtained his

4

consent to search his person. It was not until consent was given and the consensual search was executed that the instant firearm was lawfully recovered.

**A.      Law enforcement's contact with the defendant was consensual.**

The defendant characterizes the instant encounter as an investigatory stop and states "the police not only had no probable cause to stop and detain the [d]efendant, they had no reasonable suspicion of any criminal activity." D.E. at 3.  To the contrary, the government contends and the officers will testify that the encounter was consensual.  As set forth above, Officer Fairbanks saw an individual sitting in a  parked vehicle with its headlights and engine turned off in the apartment complex parking lot.  Drawing on their experience, the information known to them, and their own observations, the officers approached the vehicle and made consensual contact with the defendant who was seated in the driver's seat of the vehicle.  The events that flowed from this lawful encounter did not result in any illegal seizure.

There are three types of permissible encounters between the police and citizens: (1) a consensual encounter, which may be initiated without any objective level of suspicion; (2) an investigative detention, if supported by reasonable articulable suspicion of criminal activity; and (3) an arrest, if supported by probable cause.  *United States v. Waldon*, 206 F.3d 597, 602 (6th Cir. 2000).  The instant encounter falls into the first category.  Whether an encounter between a police officer and a citizen is consensual depends on the officer's objective behavior, not on any subjective suspicion of criminal activity.  *Id.*

In regard to the first type of encounter, "[t]here is nothing in the Constitution which prevents a policeman from addressing questions to anyone on the streets." *Terry v. Ohio*, 392 U.S. 1, 19, n. 16, 88 S. Ct. 1868, 1879, n. 16 (1968).  "Police officers, as well as any citizen, has

5

the liberty to address questions to other persons." *Id.* at 31, 32-33, 88 S.Ct., at 1885-1886. "As long as the person to whom questions are put remains free to disregard the questions and walk away, there has been no intrusion upon that person's liberty or privacy as would under the Constitution require some particularized and objective justification." *United States v. Mendenhall*, 446 U.S. 544, 554, 100 S.Ct. 1870, 1877 (1980).

From the inception of the encounter, the defendant answered Officer Fairbanks' questions, engaged in consensual conversation with him, and never attempted to terminate the encounter or leave. *United States v. Drayton*, 536 U.S. 194, 200, 122 S.Ct. 2105 (2002) (law enforcement officers do not violate the Fourth Amendment's prohibition of unreasonable seizures merely by approaching individuals on the street or in other public places and putting questions to them if they are willing to listen). The consensual nature of this encounter is illustrated by the fact that Officer Fairbanks and King stopped their vehicle prior to reaching the defendant's vehicle, and therefore, did not block the defendant's vehicle. Accordingly, the defendant was free to drive away if he chose. Additionally, Officer Fairbanks asked the defendant if he would step out of the vehicle and if he could search him, to which the defendant agreed. Further, there were two officers and two subjects involved in the overall encounter, and each officer spoke to the respective subjects separately and on opposite sides of the vehicle. Thus, the defendant was not out-numbered by law enforcement, and until the firearm was found on the defendant's person, he was only interacting with Officer Fairbanks. The encounter occurred in an open and well-lit parking lot rather than places where a persons' freedom might be more restrained, like a police station. Finally, the defendant was not handcuffed until the firearm was recovered from his person. Accordingly, there was no unlawful seizure of the defendant.

B.    **The defendant gave the officers free and voluntary consent to search his person**.

During the previously described consensual encounter, Officer Fairbanks asked the defendant for consent to search the defendant's person, and the defendant gave him that consent. Additionally, the defendant's consent was free and voluntary.

It is well-established that consent is a basis for a warrantless search. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S.Ct. 2041 (1973). A search is reasonable if a person with a privacy interest in the item to be searched gives free and voluntary consent. *United States v. Ivy*, 165 F.3d 397, 402 (6th Cir. 1998) (quoting *Schneckloth*, 412 U.S. at 219). Here, Taylor gave consent to search his person.

The issue is whether the defendant freely and voluntarily consented to the search. For consent to be valid, the defendant must have authority to consent and must consent freely and voluntarily. *Schneckloth*, 412 U.S. at 219. Whether the consent was freely and voluntarily given "is a question of fact to be determined from all the circumstances," *Schneckloth*, 412 U.S. at 227. Several factors should be examined to determine whether consent is valid, including the age, intelligence, and education of the individual; whether the individual understands his constitutional rights; whether the individual understands the right to refuse to consent; the length and nature of detention; and the use of coercive or punishing conduct by the police. *Schneckloth*, 412 U.S. at 226 (internal citations omitted). No single factor is dispositive. *Id.* at 226-7.

Here, each of the aforementioned factors weigh in favor of finding the defendant's consent was free and voluntary. At the time of the instant encounter, the defendant was 25 years old and had obtained his General Equivalency Diploma ("GED"). The defendant had multiple encounters with law enforcement, including numerous arrests, prior drug convictions, and an

7

encounter with at least one of the very officers involved in the instant encounter. Thus, the defendant had extensive prior involvement with law enforcement and the judicial system. In regard to whether the defendant understood his right to refuse to consent, Officer Fairbanks asked, rather than told or demanded, the defendant for consent to search his person. By the very nature of the way Officer Fairbanks made the request, it was apparent that the defendant could refuse to consent. The length and nature of the encounter was reasonable. Again, two officers and two subjects were involved. Each officer spoke to the subjects on respective sides of the vehicle, thus the defendant was not faced with two officers addressing him. The length of the encounter was short, and a very short period of time elapsed prior to the consensual search of the defendant and the recovery of the instant firearm. Finally, there was no coercive or punishing conduct by police. Officer Fairbanks asked the defendant for consent to search his person and the defendant gave consent. Neither officer drew his weapon, threatened the defendant, nor engaged in any other coercive behavior. Thus, there is no reason to conclude that the defendant's consent was anything but free and voluntary. Because consent was freely and voluntarily given, the defendant's claim must fail.

**C.     The defendant was not seized prior to the recovery of the instant firearm**.

The defendant alleges that the officers "...without probable cause or reasonable suspicion to believe that the [d]efendant had committed any crime, pulled in front of the [d]efendant's car blocking its exit. The officers went to each door of the car, barring the passengers from exiting." D.E. at 1. First, the officers did not need reasonable suspicion or probable cause to make contact with the defendant, since the defendant was willing to engage in the consensual encounter with the officers. Second, and contrary to the defendant's position, the officers did not block the

8

defendant's car, nor bar the passengers from exiting the vehicle. In fact, Officer Fairbanks asked the defendant to get out of the vehicle rather than blocking the defendant in the vehicle as the defense now contends.

The United States Supreme Court addressed this issue, and its characterization of when a seizure occurs is instructive in the instant matter. *Mendenhall*, *supra*, 466 U.S. at 554, 100 S.Ct. at 1877. There the Court held,

> [a] person is "seized" within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave. Examples of circumstances that might indicate a seizure, even where the person did not attempt to leave, would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled. In the absence of some such evidence, otherwise inoffensive contact between a member of the public and the police cannot, as a matter of law, amount to a seizure of that person.

*Id*. (internal citations omitted).

Here, based on the totality of the circumstances, a reasonable person would have concluded that they were free to leave. The officers stopped their car prior to reaching the defendant's vehicle and did not block the defendant from leaving. Officer Fairbanks saw the defendant's vehicle parked to the officer's left as they approached the defendant's vehicle, and the officers' vehicle stopped short of reaching the defendant's vehicle because the officers knew that blocking a vehicle under those circumstances was prohibited.

Additionally, there was not a threatening presence of several officers. There was one officer per subject present, thus a two-to-two ratio. The officers did not display their weapons to the defendant or his passenger. The officers did not touch the defendant until the defendant gave

9

Officer Fairbanks consent to search his person. Finally, the officers did not use language or a tone of voice to indicate that compliance with the officers' request might be compelled. Moreover, the defendant did not attempt to leave at any point during the encounter.

In light of the totality of the circumstances, the defendant was not seized by law enforcement until the firearm was recovered.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court deny the defendant's Motion to Suppress.

Respectfully submitted,

EDWARD M. YARBROUGH
UNITED STATES ATTORNEY

\s\***Brooklyn D. Sawyers***
Brooklyn D. Sawyers
Assistant United States Attorney
110 Ninth Avenue South, Suite A-961
Nashville, Tennessee 37203
(615) 736-5151

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing was served on James W. Price, Jr., Defense Counsel for Bobby Eugene Taylor, through the Court's electronic filing system on December 9, 2009.

\s\***Brooklyn D. Sawyers***
Assistant United States Attorney